**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AMERISURE INSURANCE COMPANY,
a foreign corporation authorized to transact
business in Florida A/S/O Plantation
Housing Corp.,

                        Plaintiff,

-vs-                                                  Case No. 3:14-cv-154-J-34JRK

SOUTHERN WATERPROOFING, INC.,
a Florida corporation,

                        Defendant.
_____

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Southern Waterproofing's Motion to Dismiss Counts I, III, and IV of Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 6; Motion) filed on February 21, 2014. In the Motion, Defendant Southern Waterproofing Inc. (Southern) requests that the Court dismiss Counts I, III, and IV of the Complaint (Doc. 2) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), for "failure to state a cause of action." See Motion at 1-2. Southern alternatively argues that the Court should require Plaintiff Amerisure Insurance Company (Amerisure) to provide a more definite statement regarding its causes of action.[1] Id. at 2. On March 6, 2014, Amerisure filed a response in opposition to the Motion. See Plaintiff Amerisure Insurance Company's Memorandum of Legal Authority in Opposition to Defendant's Motion to Dismiss Counts I,

---

[1] Although it requests a more definite statement generally at the outset of the Motion, Southern includes argument on this request only with respect to Count I, the breach of contract claim.

III, and IV of Plaintiff's Complaint (Doc. 11; Response).  Accordingly, this matter is ripe for review.

**I.     Standard of Review**

When considering a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure (Rules(s)), the Court must accept all factual allegations in the complaint as true, construing the allegations and drawing all reasonable inferences in the light most favorable to the plaintiff. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  Rule "8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007). Normally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   However, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted).  As a result, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Of course, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief.'" Amer. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679)).

## II.   Background

This action stems from a residential construction project performed on property owned by Gary Glaser (Owner), and located at 8 Ocean Club Drive, Amelia Island, Florida (the Project). See Complaint ¶¶ 4, 7. "The Project consists of four (4) stories with five (5) balconies on the front and three (3) on the rear." Id. at 7. Plantation Housing Corp. (PHC) was the contractor for the Project, and Southern served as PHC's subcontractor. Id. ¶¶ 8-9. During the construction of the Project, PHC maintained a commercial general liability insurance policy with Amerisure (the Policy), and the Policy was in "full force and effect" during the relevant time. Id. ¶ 10.

According to the Complaint, Southern's "scope of work on the Project was not constructed in accordance with industry standards, nor was it constructed in accordance with the manufacturer's instructions." Id. ¶ 11. Amerisure alleges that in 2005, after the May 2004 completion of the Project, "the exterior balconies/decks [on the Project] were evidencing water intrusion." Id. ¶ 12. Amerisure contends that although Southern performed remediation to various balconies and decks in 2005, the Project again experienced water intrusion at the balconies and decks in 2011. Id. ¶¶ 13-14. Amerisure hired Construction Solutions, Inc. (CSI), a forensic engineering company, to investigate the water intrusion and damages, and in a January 23, 2012 report, CSI concluded that the cause of the damage to the balconies/decks was the "incorrect installation and subsequent failure of the deck waterproofing." Id. ¶¶ 15-17; Ex. A at 4. According to Amerisure, "[t]he damages that

occurred due to the improper installation of the waterproofing membrane not only caused damages to the balconies/decks themselves, but also cause[d] damage to other property, which included, but was not limited to corrosion of joist hangers/connections, as well as damage to OSB and structural joists." Id. ¶ 18.

The Policy provides insurance coverage for the "other property damage" to the Project. Id. ¶ 19. As such, PHC made a claim to Amerisure under the Policy with respect to these damages, and Amerisure alleges that it "was required to pay PHC the sum of $221,851.45 for damage to other property . . . ." Id. ¶ 20. Amerisure asserts that it is "legally and equitably subrogated to PHC's rights to the extent of said payment." Id. Based on the foregoing, Amerisure, as subrogee of PHC, brings the instant action against Southern and asserts claims for breach of contract, negligence, equitable subrogation, contribution, and a violation of the Florida Building Code. See generally Complaint. Southern moves for dismissal of the breach of contract, equitable subrogation, and contribution claims. See Motion at 1.

### III. Discussion

#### A. Contribution

Florida's Uniform Contribution Among Tortfeasors Act provides, in pertinent part, that:

> A liability insurer who by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's pro rata share of the common liability. This provision does not limit or impair any right of subrogation arising from any other relationship.

Fla. Stat. § 768.31(e).  Significantly, Florida law limits a tortfeasor's right of contribution in that "[a] tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement . . . ."  See Fla. Stat. § 768.31(d).  Moreover, "[t]o state a claim for contribution, the claimant must allege a common liability to the injured party."  See Mayor's Jewelers, Inc. v. Meyrowitz, No. 12-80055-CIV, 2012 WL 2344609, at *9 (S.D. Fla. June 20, 2012).

Southern first contends that the Court should dismiss the contribution claim because "[t]here are no set of facts under which Amerisure (standing in the shoes of PHC) and Southern could be 'jointly and severally liable' for the injuries sustained by Mr. Glaser . . . ."  See Motion at 3.  Southern relies on T&S Enters. Handicap Accessibility, Inc. v. Wink Indus. Maint. & Repair, Inc., 11 So. 3d 411, 412 (Fla. 2d Dist. Ct. App. 2009) to argue that because joint and several liability in Florida has been abolished, judgments in Florida are now entered purely on a party's pro rata allocation of fault, obviating the need for contribution claims.  See Motion at 3.  Southern maintains that Amerisure's allegation that it paid more than its share of the common liability is insufficient because it is "unclear" what transpired between Amerisure and the Owner.  Id. at 4.  Additionally, Southern argues that if PHC was not at fault for the Owner's damages at all, as Amerisure contends, then it had no obligation to pay the Owner's damages.  See id.

As an initial matter, the Court notes that Southern's reliance on T&S Enterprises is misplaced.  In that case, the court reasoned that, with joint and several liability abolished, courts will enter judgments in negligence actions against each liable party only on the basis

of that party's percentage of fault. See T&S Enters., 11 So. 3d at 412. As such, a defendant tortfeasor will not be held liable for more than its pro rata share of the damages, and therefore, that defendant has no need to bring a third-party complaint for contribution against a non-party tortfeasor. Id. at 412-13; Maguire v. Demos, No. 2:10-cv-782-FtM-3DNF, 2012 WL 859605, at *2 (M.D. Fla. Mar. 12, 2012); Zurich Am. Ins. Co. v. Hi-Mar Specialty Chems., LLC, No. 08-80255-CIV, 2010 WL 298392, at *4 (S.D. Fla. Jan. 19, 2010). This analysis does not address a direct claim for contribution where a tortfeasor alleges that it has already paid more than its pro rata share. Indeed, the court specifically stated that its decision "does not determine any rights [the tortfeasor] may have if it elects to settle the plaintiffs' claims in exchange for a general release which includes [the non-party tortfeasor]." T&S Enters., 11 So. 3d at 413. Because the instant action is not a third-party complaint, but rather a direct action for contribution based on Amerisure's prior payment to remediate the other property damage, the Court finds the T&S Enterprises analysis to be inapplicable.

Although difficult to discern, it appears Southern may also be arguing that Amerisure fails to allege common liability between PHC and Southern. As set forth above, "[i]n order to state a cause of action for contribution, [Amerisure is] required to plead or allege 'common liability' on the part of both [Southern] and [PHC.]" See Ins. Co. of N. Am. v. Quality Commercial Grp., Inc., 687 So. 2d 960, 962 (Fla. 5th Dist. Ct. App. 1997). Here, Amerisure alleges that "it paid to remediate the other property damage that occurred as a result of the defective waterproofing membrane that Southern Waterproofing furnished and installed on the Project." See Complaint ¶ 41. Moreover, Amerisure asserts that Southern "was primarily liable for the non-conforming workmanship at issue, and to the extent the PHC was a liable

-6-

tortfeasor, PHC (through Amerisure) paid more than its pro rata share of the common liability." See id. ¶ 43 (emphasis added). Although the facts supporting this assertion are sparse, at this stage of the proceedings, the Court finds that Amerisure has sufficiently alleged common liability. To the extent Amerisure also takes the position that PHC is not liable for any of the damages, this does not warrant dismissal of the contribution claim because Amerisure is permitted to allege alternative or inconsistent positions.[2] See Rule 8(d)(2)-(3). Thus, the Court will not dismiss the contribution claim on this basis.

Next, Southern argues that even if Amerisure acknowledges that PHC may have some fault, Amerisure nonetheless fails to allege that it obtained a release of Southern as part of its settlement with the Owner. See Motion at 4. However, upon review of the Complaint, the Court finds that this argument is unavailing. In the Complaint, Amerisure asserts that it "paid the remediation costs to protect the interests of its insured, PHC, Southern Waterproofing's interests, as well as Amerisure's own interests, and did not act as a volunteer." See Complaint ¶ 42 (emphasis added). Although not a model of clarity, construing the allegations and drawing all reasonable inferences in the light most favorable to Amerisure, the Court finds that this allegation sufficiently states that Amerisure extinguished the Owner's claims against Southern with respect to the other property damage to the Project. To the extent there is a dispute about whether Amerisure's remediation

---

[2] The Court notes that if "'the party against whom contribution is sought is found one hundred percent liable for tortious injuries,'" then the remedy of contribution fails. Ins. Co. of N. Am., 687 So. 2d at 962 (quoting McKenzie Tank Lines, Inc. v. Empire Gas Corp., 538 So. 2d 482, 484 (Fla. 1st Dist. Ct. App. 1989)). "In that event, 'payments made in settlement with injured parties by a non-liable codefendant in return for release of a responsible codefendant, are recoverable under the theory of indemnity or subrogation.'" Id. Accordingly, Amerisure raises an alternative claim for equitable subrogation in the Complaint. See Complaint at 5-6.

payment actually extinguishes Southern's liability to the Owner, this is a factual issue which cannot be resolved on a Motion to Dismiss. See Mayor's Jewelers, Inc., 2012 WL 2344609, at *9; see also Columbia Bank v. Turbeville, 143 So. 3d 964, p. 6 (Fla. 1st Dist. Ct. App. 2014) (reviewing a motion to dismiss an equitable subrogation claim and finding the argument that plaintiff did not obtain a proper release of claims for defendant to be a factual dispute not a basis for dismissal).³ Accordingly, the Court will deny Southern's Motion to Dismiss with respect to Count IV of the Complaint.

### B. Equitable Subrogation

Next, Southern moves for dismissal of Amerisure's claim for equitable subrogation set forth in Count III of the Complaint. Under Florida law, "[s]ubrogation is the substitution of one person in the place of another with reference to a lawful claim or right." W. Am. Ins. Co. v. Yellow Cab Co. of Orlando, Inc., 495 So. 2d 204, 206 (Fla. 5th DCA 1986) (quoting Boley v. Daniel, 72 So. 644, 645 (Fla. 1916)). In relation to insurance, "[s]ubrogation is the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer." Monte De Oca v. State Farm Fire & Cas. Co., 897 So. 2d 471, 472 n.2 (Fla. 3d DCA 2004) (internal quotation and citation omitted). Equitable subrogation, the particular subrogation doctrine at issue in this action, "is an equitable remedy rooted in the legal consequence of the actions and relationship between the parties." Columbia Bank, 143 So. 3d 964, p. 5. A plaintiff must allege five elements in order to maintain a claim for equitable subrogation: "(1) that it made

---

³ Page numbers are not yet available for this case. As such, the Court notes that it cites to the page numbers of the Westlaw document.

the payment at issue to protect its own interests, (2) the payment was non-voluntary, (3) it was not primarily liable for the debt paid, (4) it paid the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1005 (11th Cir. 2004) (citing Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999)); see also State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So. 3d 1099, 1100-01 (Fla. 2d Dist. Ct. App. 2009) (stating same and citing Dade Cnty. Sch. Bd., 731 So. 2d at 646). Notably,

> "[s]ubrogation in equity is not available to a mere volunteer or stranger who, without any duty or obligation to intervene and without being so requested, pays the debt of another. The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged."

Dade Cnty. Sch. Bd., 731 So. 2d at 647 (quoting Yellow Cab Co. of Orlando, Inc., 495 So. 2d at 207). "The 'policy behind the doctrine is to prevent unjust enrichment by assuring that the person who in equity and good conscience is responsible for the debt is ultimately answerable for its discharge.'" Columbia Bank, 143 So. 3d 964, pg. 5 (quoting Kala Inv., Inc. v. Sklar, 538 So. 2d 909, 917 (Fla. 3d Dist. Ct. App. 1989)).

Southern's sole challenge to the equitable subrogation claim is that Amerisure, via PHC, is primarily liable for the debt and therefore cannot seek subrogation. See Motion at 6. In the Complaint, Amerisure alleges that Southern is primarily responsible for the debt because the damages were caused by the defective waterproofing membrane that Southern furnished and installed. See Complaint ¶¶ 36-39. Nonetheless, Southern contends that, because PHC was the general contractor for the Project, PHC owed a "non-delegable duty

to [the Owner] to see to it that due care was used in constructing/repairing the premises," and as such, the debt Amerisure paid "was not a debt for which Southern could have been primarily responsible for [sic]." See Motion at 6 (citing Mills v. Krauss, 114 So. 2d 817 (Fla. 2d Dist. Ct. App. 1959)). However, Amerisure's allegations that PHC sub-contracted with Southern to perform the work and that Southern failed to perform the work properly causing damages must be taken as true at this stage of the proceedings. Thus, even accepting Southern's contention that PHC owed a duty to the Owner, Southern cites no authority to suggest that such a duty somehow precludes Southern, as the entity that performed the allegedly defective work, from being primarily liable for the debt. Moreover, rather than undermine Amerisure's claim for subrogation, the proposition that PHC owed a non-delegable duty to the owner supports the claim of equitable subrogation. This is so because such liability is consistent with Amerisure's allegations that its payment was non-voluntary and to protect its own interests, both required elements of a subrogation claim. See Complaint ¶ 37. Indeed, if Amerisure owed no duty and was merely a "volunteer or stranger who, without any duty or obligation to intervene . . . [paid] the debt of another," then it would be unable to seek equitable subrogation. See Dade Cnty. Sch. Bd., 731 So. 2d at 647. Accordingly, Southern's request for dismissal of the equitable subrogation claim is also due to be denied.

### C. Breach of Contract

Finally, Southern argues that the Court should dismiss Amerisure's breach of contract claim because Amerisure fails to allege the material breach of any contractual duty that Southern owed to PHC. See Motion at 6-7. Southern maintains that without more specific

information regarding the scope of Southern's work on the Project, "Southern is at a loss to determine what contractual duty it may have breached by virtue of its work at the [P]roject, if any." Id. at 7.  Alternatively, Southern requests that the Court "require Amerisure to include specific allegations regarding the scope of Southern's work at the [P]roject or attach a complete copy of the subcontract relating to Southern's work at the [Owner's] residence." Id.  Upon review, the Court finds Southern's request for dismissal or clarification of the breach of contract claim to be without merit.

To state a claim for breach of contract under Florida law, a plaintiff must allege: "(1) a valid contract; (2) a material breach; and (3) damages." See Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999).  Here, Amerisure alleges that on January 9, 2004, PHC and Southern entered into a Subcontract Base Agreement for Southern to perform work on the Project, and attaches this Agreement to the Complaint. See Complaint ¶¶ 7, 24-25, Ex. B.  Amerisure maintains that Southern materially breached the Agreement "by, among other things, incorrectly installing the Project's waterproofing membrane." Id. ¶ 26. According to the Complaint, the incorrect installation of the waterproofing membrane caused damage from water intrusion to seven of the balconies/decks, as well as other property damage. Id. ¶¶ 14-18.  In support of these allegations, Amerisure attaches the CSI Report to the Complaint in which CSI provides additional detail regarding the problems with the balconies/decks. See id.; Ex. A.  As a result of the other property damage allegedly caused by Southern's purported breach, Amerisure maintains that PHC made a claim under the Policy, and "Amerisure was required to pay PHC the sum of $221,851.45, for damage to other property . . . ." Id. ¶¶ 20, 27.

Based on the foregoing, the Court finds that Amerisure has adequately alleged the essential elements of a breach of contract action: a valid contract, a material breach and resulting damages. Although Southern contends that more specificity is necessary, the Court finds that the foregoing allegations are sufficient to state a plausible claim for relief and to provide Southern with fair notice of the claims against it. See Romacorp, Inc. v. Prescient, Inc., No. 1:10-cv-22872, 2011 WL 1430277, at *5 (S.D. Fla. Apr. 14, 2011); Batlle v. Wachovia Bank, N.A., No. 10-21782-CIV, 2011 WL 1085579, at *3 (S.D. Fla. Mar. 21, 2011) ("The Federal Rules of Civil Procedure do not require that Plaintiffs set out in detail the facts upon which their breach of contract claim is based."). "For better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." See Comprehensive Care Corp. v. Katzman, No. 8:09-cv-1375-T-24-TBM, 2010 WL 1433414 (M.D. Fla. Apr. 9, 2010).

Moreover, Southern's suggestion that Amerisure must attach the Plans, Purchase Orders, Bid Specifications, and Construction Practices in order for Southern to have adequate notice regarding the "scope of Southern's work at the [P]roject," is unavailing. See Motion at 7. Although Florida Rule 1.130 provides that "[a]ll bonds, notes, bills of exchange, contracts, accounts, or documents upon which action may be brought . . . shall be incorporated in or attached to the pleading," once this case was removed to federal court, the federal rules of procedure rather than state rules of procedure became applicable. See Hollis v. Fla. State Univ., 259 F.3d 1295, 1299 (11th Cir. 2001). The Federal Rules of Civil Procedure do not contain a complementary rule to Florida Rule 1.130 requiring contracts and documents to be attached to pleadings. See D'Alessandris v. Ley, No. 8:07-cv-1975-T-

26TGW, 2007 WL 3256459, at * 1 (M.D. Fla. Nov. 2, 2007). Instead, the critical issue under the Federal Rules is whether Amerisure has alleged a "short and plain statement of the claim" pursuant to Rule 8(a), rather than whether the contract or document is incorporated into the Complaint. See United States v. Vernon, 108 F.R.D. 741, 742 (S.D. Fla. 1986) ("A reading of the plain language of Fed.R.Civ.P. 10(c) indicates that written instruments are not required to be attached to a party's pleading."); see also 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed. 2004) (stating that incorporation of exhibits is permissive and not required). Here, Amerisure has met its burden under Rule 8, and as such, the Court will deny Southern's Motion to Dismiss with respect to that claim as well.[4]

In accordance with the foregoing, it is

**ORDERED:**

---

[4] Southern's request for a more definite statement with respect to the breach of contract claim is also due to be denied. Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." See Rule 12(e). Such motions are disfavored under the law, and are "'not to be used as a substitute for discovery.'" See United Enter. Fund, LP v. Modern Bus. Assocs., Inc., No. 8:08-cv-1488-T-24-MAP, 2008 WL 4790537, at *1 (M.D. Fla. Oct. 28, 2008) (quoting Eye Care Int'l, Inc. v. Underhill, 92 F. Supp. 2d 1310, 1316 (M.D. Fla. 2000)). Indeed, "the purpose of a more definite statement is to rectify unintelligibility in a complaint, not to provide more details that can reasonably be left to discovery." See Wells Fargo Bank NA v. BBMJ, LLC, No. 1:11-cv-127-MP-GRJ, 2012 WL 441286, at *1 (N.D. Fla. Feb. 10, 2012). As detailed above, the Complaint is not so "vague and ambiguous" that Southern cannot reasonably prepare a response. The Complaint provides Southern with notice of the contract at issue, the Project to which it relates, the manner in which Southern allegedly breached the contract, and the damages that resulted. It cannot be said that the lack of additional details renders the Complaint so ambiguous as to be unintelligible.

Defendant Southern Waterproofing's Motion to Dismiss Counts I, III, and IV of Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 6) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2014.

*/s/ Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record
Pro Se Parties